## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

PAULA RUSH, DIANE PERRY,
BRIAN TODD, on behalf of themselves
and all others similarly situated,

CASE NO.: 07-2022

Plaintiffs,

v.

WHIRLPOOL CORPORATION,

Defendant.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................2

II.   STATEMENT OF FACTS....................................................................................4

      A. Defendant's Manufacture and Sale of the Refrigerators...................................4

      B. Refrigerator Design...........................................................................................5

      C. The Refrigerator Defect ....................................................................................6

      D. Defendant's Awareness of the Defect and Failure to Alert Consumers ..........6

III.  PROPOSED CLASS REPRESENTATIVES ......................................................12

      A.  Paula Rush.....................................................................................................12

      B.   Diane Perry...................................................................................................13

      C.   Brian Todd....................................................................................................14

IV.   PROCEDURAL BACKGROUND......................................................................14

V.    LEGAL STANDARD..........................................................................................15

VI.   ARGUMENT.......................................................................................................15

      A.  The Elements of Rule 23(a) Are Satisfied ....................................................15
          1.  The Classes Are so Numerous that the Individual Joinder of all Members
              Would Be Impracticable .........................................................................16
          2.  There Are Questions of Law and Fact Common to Plaintiffs and
              Members of the Classes ..........................................................................18
          3.  The Claims of the Representative Plaintiffs Are Typical of the Claims
              Of the Classes .........................................................................................19
          4.  The Representatives of the Classes and Their Counsel Will Fairly
              And Adequately Protect the Interests of the Classes ..............................21

      B.  The Elements of Rule 23(b0(3) Are Satisfied .............................................23
          1.  Common Questions of Law and Fact Predominate ...............................23
          2.  Class Action is the Superior Method of Adjudication...........................27

VII.  CONCLUSION ...................................................................................................30

i

## TABLE OF AUTHORITIES

Federal Cases

*Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ...................................20, 21

*AmChem Prod. v. Windsor*, 521 U.S. 591 (1997)...................................................23, 24, 28

*Arkansas Ed. Ass'n v. Board of Ed. of Portland, Ark.*, 446 F.2d 763 (8th Cir. 1971).......16

*Becnel v. KPMG LLP*, 229 F.R.D. 592 (W.D. Ark. 2005) ..........................................16, 18

*Bird Hotel Corp. v. Super 8 Motels, Inc.*, 246 F.R.D. 603 (D. S.D. 2007)........................26

*Blades v. Monsanto Company*, 400 F.3d 562 (8th Cir. 2005) ...........................................23

*Bradford v. AGCO Corp.*, 187 F.R.D. 600 (W.D. Mo. 1999) ...........................................16

*Bradford v. Union Pacific R.R. Co.*, 2007 WL 2893650 (W.D. Ark. Sept. 28, 2007) 15, 22

*Bussian v. DaimlerChrysler Corp.*, 2007 WL 1752059 (M.D.N.C. June 18, 2007) .........25

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)...................................................25

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ................................20, 21, 28

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977)..........................................20, 21

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).........................................................15

*Farmers Insurance Co., Inc. v. Snowden*, 366 Ark. 138 (Ark. 2006)................................26

*FirstPlus Home Loan Owner1997-1 v. Bryant*, 2008 WL 518226 (Ark. Feb. 28, 2008)..16

*Gardner v. First American Title Ins. Co.*, 2003 WL 221844 (D. Minn. 2003) .................21

*Gentry v. C & D Oil Co.*, 102 F.R.D. 490 (W.D. Ark. 1984)......................................16, 22

*Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390 (8th Cir. 1983) ..................................15

*Goodwin v. Conagra Poultry Co.*, 2007 WL 1434905 (W.D. Ark. May 15, 2007) ..........23

*Hanson v. Acceleration Life Ins. Co..*, 1999 WL 33283345 (D.N.D. March 16, 1999)24, 26

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992)........................21

*In re Prempro*, 230 F.R.D. 555 (E.D. Ark. 2005)..............................................................15

*In re Workers' Compensation*, 130 F.R.D. 99 (D. Minn. 1990)........................................24

*Jancik v. Cavalry Portfolio Services, LLC*, 2007 WL 1994026 (D. Minn., July 3, 2007) 18

*Leach v. Standard Register Co.*, 94 F.R.D. 621 (W.D. Ark. 1982)....................................22

*Like v. Carter*, 448 F.2d 798 (8th Cir. 1971).....................................................................18

*Mehl v. Canadian Pacific Railway Ltd.*, 227 F.R.D. 505 (D. N.D. 2005).........................24

*Midwestern Machinery v. Northwest Airlines, Inc.*, 211 F.R.D. 562 (D. Minn. 2001) .....26

*Moncravie v. Dennis*, 89 F.R.D. 440 (W.D. Ark. 1981)....................................................16

*Mooney v. Allianz Life Ins. Co. of North America*, 244 F.R.D. 531 (D. Minn. 2007).......28

*Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358 (E.D. Ark. 2007)......................15, 16, 26

*Newsome v. Up-to-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004) ...................25

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21 (D. Mass. 2003)...........................25

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982) ...............................16, 18, 20, 22

*Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007) .........................................25

*Robinson v. Sears, Roebuck and Co.*, 111 F.Supp. 2d 1101 (E.D. Ark. 2000)..................21

*Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
241 F.R.D. 85 (D. Mass. 2007).........................................................................................25

*Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304 (8th Cir. 1978) ...................................22

*Zeno v. Ford Motor Co.*, 238 F.R.D. 173 (W.D. Pa. 2006)...............................................25

Other

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3.5 (4th ed. 2002) ......16

1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.10 (4th ed. 2002) .18

7A Wright, Miller & Kane, Federal Practice & Procedure, §1778 (2d ed. 1986).............24

7A Wright, Miller & Kane, Federal Practice & Procedure, §1780 (2d ed. 1986).............29

iii

## I.     INTRODUCTION

Rule 23 of the Federal Rules of Civil Procedure has a very clear purpose – to preserve judicial resources and maximize efficiency by permitting a small group of plaintiffs to step forward and represent their own interests and those of a larger group of similarly aggrieved persons. Nowhere is that purpose better met than in an action such as this.

The Defendant, herein, Whirlpool Corporation ("Whirlpool") is a global corporation that manufactures, markets and sells all manner of consumer appliances, including the side-by-side refrigerators ("Refrigerators") that are the subject of this litigation. Plaintiffs are amongst the millions of persons who have purchased these Refrigerators.

Unbeknownst to Plaintiffs and the millions of others who have purchased the Refrigerators, is that these Refrigerators contain a defect which has caused thousands of in-door ice systems to fail. ███████████ ████████████████████████████ ███████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

As a result, Plaintiffs and consumers have purchased these Refrigerators, believing that what they were buying was— as advertised— a top-of-the-line Refrigerator that would perform and last without incident for years to come. Unfortunately, Plaintiffs' and consumers' expectations were not nearly met.

Rather, Plaintiffs and the Members of the Classes they represent experienced firsthand the effects of the defect in the Refrigerators. Specifically, the Refrigerators purchased by Plaintiffs and the Members of the Classes they seek to represent have experienced icemaker malfunction thereby causing Plaintiffs and Class Members to suffer damages.

2

For this reason, Plaintiffs Paula Rush, Diane Perry, and Brian Todd (collectively, "Plaintiffs") have filed a class action lawsuit on behalf of themselves and several thousands of similarly situated individuals against Defendant Whirlpool for designing, manufacturing, marketing, warranting, and selling defective side-by-side Refrigerators throughout Arkansas, California, and Maryland.

The Classes that Plaintiffs propose to represent and that they respectfully request that this Court certify are as follows[1]:

1. **Arkansas Class**: All persons in Arkansas who own a Whirlpool-branded side-by-side Refrigerator manufactured between 2002 and the present that contains an in-door ice system which has malfunctioned.

2. **California Class**: All persons in California who own a Whirlpool-branded side-by-side manufactured between 2002 and the present that contains an in-door ice system which has malfunctioned.

3. **Maryland Class**: All persons in Maryland who own a Whirlpool-branded side-by-side Refrigerator manufactured between 2002 and the present that contains an in-door ice system which has malfunctioned.

As demonstrated below, these Classes satisfy all of the certification requirements mandated by Federal Rule of Civil Procedure 23(a) including, numerosity of members, commonality of questions of law and fact, typicality of claims, and adequacy of representation. The additional requirements of 23(b)(3), which call for a showing that common issues predominate over individual questions and that class treatment is the superior method of adjudication, are also satisfied. For these reasons, and as more fully explained below, Plaintiffs' motion for class certification should be granted.

---

[1] The definitions of the Classes have been narrowed to include only those consumers who actually have experienced a manifestation of the alleged defect in their Refrigerators. ███████████████████████████████████████████

## II.   STATEMENT OF FACTS

### A. <u>Defendant's Manufacture and Sale of the Refrigerators</u>

Defendant Whirlpool Corporation is the world's leading manufacturer and marketer of

major home appliances.  For the 2007 fiscal year, Whirlpool reported sales of $19.4 billion.  *See*

Whirlpool Corporation, Securities and Exchange Commission 10-K Report, filed February 22,

2008, p.2 (Mulkey Decl. ¶ 2).[2]  Thirty-percent, or $5.8 billion, of this total revenue was

generated by Whirlpool's sale of Home Refrigerators and Freezers.  *Id.*

Whirlpool consists of 72 manufacturing and research centers and more than 73,000

employees worldwide.  *Id.*; *see also* Whirlpool Corporate Fact Sheet[3] (Mulkey Decl. ¶ 3).

Whirlpool markets a variety of well-known brands including *Whirlpool*, *Maytag*, *KitchenAid*,

*Jenn-Air*, *Amana*, *Roper*, *Admiral*, *Bauknecht*, *Brastemp,* and *Consul* to consumers in more than

170 countries around the world.  *Id.*

For decades, Whirlpool has been in the business of manufacturing various types of

Refrigerators and has specifically been manufacturing, marketing, advertising, and selling the

defective side-by-side Refrigerators at issue here since ███.  Second Amended Complaint,

("SAC") (Doc. #28), June 14, 2007, ¶ 20.  Upon information and belief, Whirlpool has sold,

directly or indirectly several thousands of side-by-side Refrigerators in Arkansas, California, and

Maryland, and many thousands more nationwide.  *Id.*

Over the years, Whirlpool has utilized various forms of media, including, but not limited

to, television and print advertisements, brochures, the internet, catalogs, and/or product labeling,

to market, advertise and warrant that each of its side-by-side Refrigerators is fit for the ordinary

---

[2] Hereinafter, "Mulkey Decl. ¶__," refers to the exhibits to the Declaration of Bruce Mulkey in Support of Plaintiffs' Motion for Class Certification, being filed concurrently with this Memorandum in Support of Plaintiffs' Motion for Class Certification.
[3] http://www.whirlpoolcorp.com/about/corpfactsheet/default.asp. (last visited April 30, 2008).

purpose for which such goods are used and are free from defects in materials and workmanship.

SAC ¶ 21. Contrary to its promises, however, Whirlpool's side-by-side Refrigerators suffer

from an inherent defect affecting their icemakers. This defect has reduced the effectiveness and

performance of the Refrigerators, rendering them unable to perform the ordinary purposes for

which they are used. *Id.*

### B. Refrigerator Design

The side-by-side Refrigerators at issue here have been manufactured with Whirlpool's in-

door ice system ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ This system is marketed by

Whirlpool as an innovative design that gives users "easy access to ice while freeing up valuable

shelf space." *See* Whirlpool In-Door-Ice® Ice Dispensing System Presentation, ("On-line IDI

Presentation").[5]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████████

[5] http://www.whirlpool.com/catalog/product_feature_detail.jsp?parentCategoryId=74&categoryId=96&productId=15
7&featureKey=SF07581 (last visited April 30, 2008).



In its product representations, Whirlpool ensures that the in-door ice system does not compromise the performance of its Refrigerators as it "makes and dispenses ice as quickly as our standard ice makers." *See* On-line IDI Presentation. It also promises other desirable qualities including more space, more available ice, and a removable ice bin. *Id.* Indeed, Whirlpool promotes the reliability and capacity of the icemakers by stating: "Forget about filling multiple ice trays every day, the In-Door-Ice® ice dispensing system automatically produces a large amount of ice ready for your needs." *Id.*

### C. The Refrigerator Defect

The side-by-side Refrigerators belonging to Plaintiffs and the Members of the Classes are defective.

### D. Defendant's Awareness of the Defect And Failure to Alert Consumers

Whirlpool has known of the ▮▮▮ defect alleged in this litigation for nearly as long as it has manufactured the in-door ice system described above.

██████████████████████████████████████ Nonetheless, Whirlpool has failed to alert

Plaintiffs and Members of the Classes of this defect or to otherwise provide them with an

appropriate remedy.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████









, it is of no benefit to the thousands of

Whirlpool consumers who, like Plaintiffs and Members of the Classes,

In fact, Plaintiffs and Members of the Classes continue to be negatively impacted by the

defective Refrigerators, for not only has Whirlpool neglected to provide any type of remedy or

11

replacement part for these persons, it has also failed to inform them that their Refrigerators do indeed contain a design defect.

## III.    PROPOSED CLASS REPRESENTATIVES

Each of the three Classes is represented by a Plaintiff who resides in the state covered by the Class and who has purchased a Whirlpool side-by-side Refrigerator containing a defective in-door ice system.

### A. <u>Paula Rush</u>

Plaintiff Paula Rush is a resident and citizen of the state of Maryland.  In October 2004, after seeing numerous television commercials and print brochures touting Whirlpool Gold products, and speaking with a salesperson at Lowe's Home Improvement Store, Ms. Rush purchased a Whirlpool Gold Refrigerator, Model Number GS6SHEXNT00.  SAC ¶ 9.  Ms. Rush purchased the Refrigerator for a total of $1837.90 (including the cost of freight, delivery, and taxes) from Lowe's.  *Id.*; *see also* Response of Paula Rush to Whirlpool Corporation's First Set of Interrogatories ("Rush Rog.") Response 3 (Mulkey Dec. ¶ 23).   Based on several representations made by Whirlpool and its dealer, Lowe's, Ms. Rush believed that the Refrigerator was of exceptional quality and of a "Gold" standard as the name suggested.  *Id.*

After approximately one year, the icemaker in Ms. Rush's Refrigerator completely ceased functioning.  *Id.*  Ms. Rush called Whirlpool on several occasions seeking repair, but was told that her Refrigerator was out of warranty and that Whirlpool would therefore not make the requested repairs.  *Id.*  In or around December 2006, Ms. Rush had a Whirlpool authorized repair person from A&E Factory Service come to her home to make repairs on her Whirlpool washing machine.  *Id.*  While he was there, Ms. Rush asked the repair person to take a look at her Refrigerator.  The repair person explained to Ms. Rush that he had seen the same problem many

times before and that the water line was freezing due to a design defect. *Id.*; Rush Rog. 5. He then informed Ms. Rush that there was not much that could be done to mend the Refrigerator other than installing a "whole new motor or other major part." SAC ¶ 9. As a temporary solution, the repair person put a piece of tape on the cold air blowing on the ice line within the Refrigerator, which allowed freezer to make ice one time before stopping again. *Id.* Ms. Rush paid that repair person $178.58, which included the cost of labor and a new water filter for the Refrigerator. *Id.* The repair person did not charge for the "band-aid" repair made to the Refrigerator. *Id.*

### B. Diane Perry

Plaintiff Diane Perry, a resident and citizen of California, purchased a KitchenAid Refrigerator, Model Number KSRS25ILSS, in November 2003 from a Whirlpool authorized dealership for the total cost of $1931.05. SAC ¶ 10. Ms. Perry's purchase was induced by advertising she observed on television, the assistance of a salesperson at the dealership, and articles she reviewed in *Consumer Reports*. *Id.* Immediately following the purchase, Ms. Perry's Refrigerator began leaking. *Id.* In December 2006, Ms. Perry paid an authorized service person to come to her home to diagnose problems with her Refrigerator's icemaker. *Id.*; *see also* Response of Diane Perry to Whirlpool Corporation's First Set of Interrogatories ("Perry Rog.") Response 5 (Mulkey Dec. ¶ 24). The service person explained that the ice making line in her Refrigerator was clogged and that there was a problem with that particular model and clogged water lines. *Id.* Ms. Perry then called Whirlpool's KitchenAid Customer Interaction Center's toll free number regarding problems with the ice-making function and was told that it was her own responsibility to fix any problems she was experiencing with her Refrigerator. *Id.*

### C. Brian Todd

Plaintiff Brian Todd is a resident and citizen of Arkansas and the owner of a Whirlpool Gold Refrigerator, Model Number GS5SHAXNL00, which he purchased in April 2005 from Lowe's for the total cost of $1,620.07. SAC ¶ 11. Only six months after the purchase, the ice-maker in Mr. Todd's Refrigerator began to malfunction. Deposition of Brian Todd, April 2, 2008 ("Todd Dep.") at 87:16-20 (Mulkey Dec. ¶ 25). In an effort to remedy the situation, an authorized Whirlpool service technician who inspected Mr. Todd's Refrigerator stuffed a paper towel into the air duct so that cold air would be diverted away from the drip spout into the ice maker. SAC ¶ 11. Not surprisingly, this solution has proven only partially effective as the icemaker's fill tube continued to freeze, requiring Mr. Todd to thaw out the inlet valve with a hair dryer in order to produce ice on several occasions. Todd Dep. 83: 23-25- 84:1.

### IV.    PROCEDURAL BACKGROUND

Plaintiffs filed the present class action in this Court on March 5, 2007. The Amended Complaint was filed on March 21, 2007. The Second Amended Complaint was filed on June 14, 2007.

On July 11, 2007, Defendant filed its Motion to Dismiss the Second Amended Complaint. On August 10, 2007, Plaintiffs filed their opposition to that motion.

On February 22, 2008, this Court issued an Order denying Defendant's Motion to Dismiss with the exception that the Court granted the motion to dismiss Plaintiff Todd's cause of action for breach of implied warranty under Arkansas law on the ground that Plaintiff Todd conceded that he was unable to establish the requisite notice element. *See* Order, February 22, 2008 (Doc.#37), at 2. The Court's decision thus preserved and confirmed the viability of Plaintiffs' remaining claims.

14

Plaintiffs now proceed to this class certification stage of litigation seeking certification of the three proposed statewide Classes —Arkansas, California and Maryland — on behalf of which the Representative Plaintiffs will pursue the remaining viable claims.[7]

## V.     LEGAL STANDARD

A district court has broad discretion in determining whether to certify a class.  *Gilbert v. City of Little Rock, Ark.,* 722 F.2d 1390, 1399 (8th Cir. 1983).  In determining whether to certify a class, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Bradford v. Union Pacific R.R. Co.*, No. 05-CV-4075, 2007 WL 2893650, at \*4 (W.D. Ark. Sept. 28, 2007) (*citing Eisen v. Carisle & Jacquelin*, 417 U.S. 156, 178 (1974)) (Ex. 1, hereto); *see also Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 365 (E.D. Ark. 2007).  As such, although the Court must conduct a "rigorous analysis," class certification is a procedural determination and should not include an inquiry into the merits of Plaintiffs' claims.  *Id.*  Arkansas' federal courts have noted that in a close case, a court should rule in favor of class certification since the court may later amend its decision.  *In re Prempro*, 230 F.R.D. 555, 566 (E.D. Ark. 2005).

## VI.     ARGUMENT

### A.   The Elements of Rule 23(a) Are Satisfied.

Each of the Classes readily satisfies Rule 23(a)'s requirements for class certification.[8] Accordingly, certification is appropriate.

---

[7]Plaintiffs Perry and Rush and Members of the California and Maryland Classes will not seek certification of their negligence claims at this time because it is unclear from discovery conducted to date whether the ▮▮▮▮▮ problem alleged in this litigation has caused damage to other property which would thus allow Members of these Classes to fit their negligence claims within the exception to the economic loss rule recognized in those states. Plaintiffs Perry and Rush reserve their right to move for certification regarding these negligence claims later in these proceedings if warranted.

## 1. The Classes Are So Numerous that the Individual Joinder of All Members Would Be Impracticable.

In considering numerosity, there are no particular rules governing the necessary size of the class, but the most obvious factor to consider is the number of persons in the proposed class. *Becnel v. KPMG LLP*, 229 F.R.D. 592, 595 (W.D. Ark. 2005) (*citing Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982)). While there is no required numerical limit, a class consisting of as few as 20 members has been deemed adequate to demonstrate numerosity. *Arkansas Ed. Ass'n v. Board of Ed. of Portland, Ark.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (affirming certification of a class of 20 members); *see also Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 496 (W.D. Ark. 1984) (finding that a class of 81 members satisfied the numerosity requirement); *Moncravie v. Dennis*, 89 F.R.D. 440, 442 (W.D. Ark. 1981) (class of 429 persons clearly satisfies the numerosity requirement; *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (class of twenty to sixty-five members is sufficiently numerous under Rule 23); *FirstPlus Home Loan Owner1997-1 v. Bryant*, No. 07-740, 2008 WL 518226, at *8 (Ark. Feb. 28, 2008) (Ex. 2, hereto) (affirming satisfaction of numerosity by 41 class members); Alba Conte & Herbert Newberg, Newberg on Class Actions §3.5, at 247 (4th ed. 2002) ("the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[8] Though not an explicit requirement, some courts have noted that the existence of a precisely defined class is a prerequisite for class certification. *See e.g., Nelson,* 245 F.R.D. at 366. Here, all three Classes are sufficiently precise as they are geographically defined and are composed of Members who can be easily identified and located upon review of individual purchase receipts and/or Defendant's own business records.

 Moreover, each Class alone, though geographically isolated, also satisfies numerosity by virtue of the great number of Members included therein. These large Classes surely satisfy the numerosity requirement.

In addition to the size of the Class, the Court may take into account many other factors when considering the practicability of joinder including the nature of the action; the size of the individual claims; the inconvenience of trying individual suits; the ease of identifying members and determining their addresses; the ease of service on members if joined; geographical dispersion; and whether proposed members of the class would be able to pursue remedies on an