individual basis. *Becnel*, 229 F.R.D. at 595 (*citing Paxton*, 688 F.2d at 559). All of these factors also weigh in favor of a finding of numerosity here.

For instance, each Plaintiff and Member of the Classes has suffered relatively minimal economic impact such that they have little incentive to incur the costs and inconveniences associated with seeking redress on their own. Further, Members of the Classes are easily ascertainable upon inspection of Whirlpool's sales records and individual purchaser's receipts. Given these factors along with the great size of the Classes, joinder of individual Members is clearly impracticable.

Based on the foregoing, it is clear that numerosity has been established.

### 2. There Are Questions of Law and Fact Common to Plaintiffs And Members of the Classes.

Rule 23(a)(2), which requires that "questions of law or fact common to the class" be present in order to maintain a class action, is easily satisfied in most cases. *Jancik v. Cavalry Portfolio Services, LLC*, No. CIV-06-3104, 2007 WL 1994026, at *5 (D. Minn. July 3, 2007) (Ex. 3, hereto); *see also* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.10, 274-278 (4th ed. 2002) ("Rule 23(a)(2) is easily met in most cases. When the party opposing the class has engaged in some conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all persons affected.").

To make this showing, Plaintiffs need not demonstrate that every question of law or fact is common to every Member of the Classes. *Paxton*, 688 F.2d at 561. Rather, commonality is satisfied "where the question of law linking class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.* Indeed, "factual differences are not fatal if common questions of law exist." *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971).

Common questions of law and fact that exist in this litigation include:

    a. Whether the Refrigerators are defective;

    b. Whether the Refrigerators have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

    c. Whether Whirlpool knew or should have known of the defect;

    d. Whether Whirlpool concealed from consumers and/or failed to disclose to disclose to the consumers the defect;

    e. Whether Whirlpool breached implied warranties of merchantability;

    f. Whether Whirlpool misrepresented the characteristics and qualities of the Refrigerators;

    g. Whether Whirlpool had a duty to sell non-defective Refrigerators to consumers and had a further duty to inform consumers of any defects once it learned of any such defects;

    h. Whether Plaintiffs and the Members of the Classes are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by Members of the Classes for repair attempts, loss of use of the Refrigerators, replacement of the Refrigerators, loss of food and/or property damage to their homes; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Refrigerators as warranted and the Refrigerators containing the defect; and (iii) the diminution of resale value of the Refrigerators resulting from the defect;

    i. Whether Plaintiffs and the Members of the Classes are entitled to replacement of their defective Refrigerators with non-defective Whirlpool refrigerators; and

    j. Whether Plaintiffs and the Members of the Classes are entitled to repair of their defective Refrigerators.

These questions form the core of the claims asserted by Plaintiffs and all Members of the Classes, and are indisputably sufficient to satisfy the relatively simple requirement of commonality.

    **3. The Claims of the Representative Plaintiffs Are Typical of the Claims of the Classes.**

The typicality requirement of Rule 23(a)(3) is satisfied "if the claims or defenses of the representatives and the members of the class stem from a similar event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 562. To distinguish typicality from the other certification prerequisites, the Eighth Circuit further requires "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Id.* (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff[s]." *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).

Here, there is no disputing that the claims of Plaintiffs and each of the Members of the Classes arise from the same basic legal theory: that Whirlpool's side-by-side Refrigerators, manufactured and sold since 2002, are defective; that Whirlpool knew of the defect; that Whirlpool failed to disclose to consumers the existence of the defect and continued to advertise and sell to consumers the defective Refrigerators. Moreover, it is evident from Whirlpool's own documents, the records of consumer complaints made directly or indirectly to Whirlpool, and internet postings that Members of the Classes have suffered the same problems with their side-by-side Whirlpool Refrigerators and, therefore, have the same grievances as Plaintiffs against Whirlpool—i.e., that the in-door icemaker does not function properly ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. *See e.g.*, SAC ¶¶ 9, 10, 11, 23; Rush Rog., Response 5, 9; Perry Rog., Response 5, 9; Response of Brian Todd to Whirlpool Corporation's First Set of Interrogatories, 5, 9 (Mulkey Dec. ¶ 27).

These common connections between Plaintiffs and Members of the Classes are sufficient to satisfy typicality, irrespective even of any factual distinctions among Members. Indeed, it is

20

well-established that so long as the claims arise out of the same legal theory, the presence of factual variations is not sufficient to preclude class certification. *Donaldson*, 554 F.2d at 831 (finding that plaintiff satisfied the typicality requirement by demonstrating that there were other members of the class who had similar grievances); *see also Alpern,* 84 F.3d at 1540 (typicality met regardless of varying damage calculations because the same set of events lead to claims of Plaintiff and putative class members, and all claims were premised on same legal theory of unlawful conduct); *DeBoer*, 64 F.3d at 1174-75 (typicality satisfied regardless of the different mortgage instruments held by class members or the amount of overage in any particular account); *Robinson v. Sears, Roebuck and Co.*, 111 F.Supp. 2d 1101, 1124 (E.D. Ark. 2000) (typicality satisfied where "alleged discriminatory acts upon which lawsuit is based and the legal theories applicable to those discriminatory acts are essentially the same as between the named plaintiffs and the class"); *Gardner v. First American Title Ins. Co.*, No. CIV-00-2176, 2003 WL 221844 (D. Minn. Jan. 27, 2003) (Ex. 4, hereto) ("Here, Plaintiffs seek the same remedy as the proposed class and therefore step over typicality's low bar."); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (typicality satisfied despite Defendant's arguments that class members could have purchased any one of twenty-one different securities during the class period). Accordingly, typicality is established even if Members of the Classes have purchased different models of Whirlpool Refrigerators than those purchased by Plaintiffs, or have experienced slightly different manifestations of damage.

        **4. The Representatives of the Classes And Their Counsel Will Fairly And Adequately Protect the Interests of the Classes.**

Rule 23(a)(4) requires satisfaction of two elements: (1) whether the Class Representatives have common interests with the Members of the Classes; and (2) whether the Class Representatives will vigorously prosecute the interests of the Class through qualified counsel.

*Paxton*, 688 F.2d at 562-63; *Bradford*, 2007 WL 2893650, at *7. Here, Defendant cannot satisfy its "heavy" burden to demonstrate that Plaintiffs and their counsel are not adequate Representatives. *Gentry*, 102 F.R.D. at 495.

The first requirement ensures that Plaintiffs "possess the same interest and suffer the same injury as those whom they seek to represent." *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304, 1308 (8th Cir. 1978). It also seeks to show that there is "no evidence of collusion or conflicting interest between the Representatives and the Class." *Gentry*, 102 F.R.D. at 493 (*citing Leach v. Standard Register Co.*, 94 F.R.D. 621 (W.D. Ark. 1982)). Each of the Plaintiffs, like all of the Members of the Classes, has purchased a defective Refrigerator and has consequently suffered the same type of injury—owning a Refrigerator with a defective icemaker. They all therefore share an identical interest in establishing Whirlpool's liability and obtaining redress. There is thus no conflict of interest among Plaintiffs and the Class Members.

Next, each named Plaintiff has and will continue to vigorously represent their respective Class in this litigation. In addition to exercising the initiative to seek and retain counsel, Ms. Rush, Ms. Perry, and Mr. Todd have each demonstrated their unyielding commitment to serve as Class Representatives by responding to numerous discovery requests, preparing for and having their depositions taken, and agreeing to inspection of their Refrigerators. Without more, this conduct suffices to show Plaintiffs' high level of interest in this action, their familiarity with Whirlpool's misconduct, as well as their ability to assist in decision making. *Gentry*, 102 F.R.D. at 493. Given the absence of any conflict between Plaintiffs and Members of the Classes and the clear zealousness of Plaintiffs in pursuing this case, Plaintiffs are more than adequate representatives of the Classes. *Id.* at 495 ("Only minimal characteristics are required for the plaintiff to be an adequate representative").

As to the adequacy of Plaintiffs' counsel, they are all well-respected members of their legal communities and have extensive experience in class action lawsuits involving defective products, particularly consumer-based complex litigation, similar in size, scope and complexity to the present case. Plaintiffs' counsel's credentials can be found in their firm resumes and on counsel's respective websites.[9]

### B. The Elements of Rule 23(b)(3) Are Satisfied.

In addition to satisfying the prerequisites of Rule 23(a), the proposed Classes meet the requirement of Rule 23(b)(3), which provides that a class action may be maintained if the questions of law or fact common to the Members predominate over any questions affecting only individual members, and if a class action is superior to other available methods of adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Blades v. Monsanto Company*, 400 F.3d 562, 569 (8th Cir. 2005).

#### 1. Common Questions of Law And Fact Predominate

Rule 23(b)(3) ensures that the proposed Classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 623 (1997).

> To determine if a common question predominates over an individual question the Court looks to the nature of the evidence necessary to make out a prima facie case. If the members of a proposed class need to present evidence that varies from member to member to make a prima facie showing on a given question, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it is a common question.

*Goodwin v. Conagra Poultry Co.*, No. 03-CV-1187, 2007 WL 1434905, at *16 (W.D. Ark. May 15, 2007) (Ex. 5, hereto); *see also Blades*, 400 F.3d at 569 (when "making the determination as

---

[9] The resumes of Plaintiffs' counsel are Ex. 6, hereto. Plaintiffs' counsels' websites are: The Mulkey Attorneys Group, LLP: www.mulkeylaw.com; The Mason Law Firm, LLP: www.masonlawdc.com; and Morgan & Morgan, PA: www.forthepeople.com.

23

to predominance, of utmost importance is whether [the issue is]…common to the class and subject to generalized proof, or whether it is instead an issue unique to each class member.") (internal citations omitted)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Mehl v. Canadian Pacific Railway Ltd.*, 227 F.R.D. 505, 520 (D.N.D. 2005) (*citing* 7A Wright, Miller & Kane, Federal Practice & Procedure, §1778 at 528-29 (2d ed. 1986)). While there is no bright line rule for determining whether common questions of law or fact predominate, Rule 23(b)(a) is typically satisfied where there is "generalized evidence that proves or disproves an element on a simultaneous, class-wide basis," since "[s]uch proof obviates the need to examine each class member's individual position." *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D. Minn. 1990).

"Predominance is a test readily met in certain cases alleging consumer fraud." *Hanson v. Acceleration Life Ins. Co.*, No. CIV-A3-97-152, 1999 WL 33283345, at *10 (D.N.D. March 16, 1999) (Ex. 7, hereto) (*citing Amchem*, 521 U.S. at 625). Here, Plaintiffs raise common issues of fact and law that predominate over any individual issues that may arise. The claims of Plaintiffs and the Members of the Classes are founded upon common legal theories arising from Whirlpool's common conduct in designing, manufacturing, advertising, warranting, and selling the defective Refrigerators. The central liability issue of whether these Refrigerators suffer from a defective ice making system is common to all Members of each of the three Classes and is thus sufficient to establish predominance.

The predominance of common questions based upon defendant's liability and the defective nature of the product in question is a hallmark of cases involving consumer goods,

products and services as has been recognized by numerous courts. *See e.g., Daffin v. Ford Motor Co.*, 458 F.3d 549, 551 (6th Cir. 2006) (affirming that predominant common issues included whether vehicle throttle body assembly was defective and whether defect reduced value of vehicle); *Powers v. Lycoming*, 245 F.R.D. 226, 238 (E.D. Pa. 2007) (holding that predominance was satisfied where all class members asserted that they were harmed by Defendant's sale of defective airplane crankshafts); *Bussian v. DaimlerChrysler Corp.*, No. 04-CV000387, 2007 WL 1752059, at *7 (M.D.N.C. June 18, 2007) (Ex. 8, hereto) ("Even if some level of individualized inquiry is required, the common issues relating to the existence of a design defect, Defendant's knowledge of the defect, Defendant's failure to disclose the defect, and whether express warranties were made and breached are common issues that predominate over any individualized issues in this case."); *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 89 (D. Mass. 2007) (finding predominance and certifying class where all of the class members bought and/or used defendant's allegedly defective bullet-proof vests); *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 197 (W.D. Pa. 2006) (finding predominance and certifying class where defendant allegedly did not provide purchasers of Ford F-150 trucks with upgraded radiators with towing and cooling options); *Newsome v. Up-to-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004) (noting that predominance is satisfied where the class-wide liability phase turned on common practices of the defendant rather than the plaintiffs); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 27 (D. Mass. 2003) (finding predominance where plaintiffs alleged a "common nucleus of facts and legal basis for their claims").

Predominance, like the other requirements, is satisfied irrespective of any remaining individualized inquiries including those concerning Whirlpool's defenses and the extent and type

of damages sustained by Members of the Classes. *See e.g., Nelson*, 245 F.R.D. at 371 ("While Wal-Mart's unique defenses may ultimately preclude some potential class members from recovering, they do not prevent the use of a class action to determine the central issue in this case . . ."); *Bird Hotel Corp. v. Super 8 Motels, Inc.*, 246 F.R.D. 603, 607-08 (D.S.D. 2007) (where proof of liability will be the same for every class member, common issues clearly predominate over any questions affecting only individual members); *Midwestern Machinery v. Northwest Airlines, Inc.*, 211 F.R.D. 562, 571 (D. Minn. 2001) ("the mere existence of individual questions such as damages does not automatically preclude satisfaction of the predominance requirement."); *Hanson,* 1999 WL 33283345, at *10 ("Where a common scheme of deceptive conduct is alleged, common question of law and fact will exist. This is so notwithstanding the need for a separate determination of damages suffered by individuals within the class."); *Farmers Insurance Co., Inc. v. Snowden*, 366 Ark. 138, 148 (Ark. 2006) ("If a case involves preliminary issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damage issues.").

Here, the predominant question concerning the existence of a common defect and Whirlpool's consequent liability can be resolved on a class-wide basis. In particular, Plaintiffs and Members of the Classes may prevail on their claims sounding in negligence, implied warranty, and consumer protection law by demonstrating that a common defect has crippled the in-door ice systems in their Whirlpool side-by-side Refrigerators; and that Whirlpool knew of, yet failed to inform its customers of this defect even as it continued to sell these Refrigerators to consumers. Such questions can readily be determined with the common proof obtained in discovery and highlighted above, which demonstrates both the existence and seriousness of the defect as well Whirlpool's knowledge thereof. These common issues qualitatively predominate

over any potential individualized issues relating to, for example, notice or affirmative defenses, which can appropriately be addressed on an individual-basis following class certification.

Also significant to the predominance determination is that Plaintiffs seek to certify three Classes in order to *separately* assert claims under Arkansas, California, and Maryland law. Because these stand-alone Classes are plainly defined by jurisdiction, there is no choice-of-law dilemma; rather, Members of each Class will uniformly invoke only the laws of the single state in which they reside. Specifically, Members of the Arkansas Class will assert claims for negligence and violation of the Arkansas Deceptive Trade Practices Act; Members of the California Class will assert claims for violations of California's Consumers Legal Remedies Act and Unfair Competition Law; and Members of the Maryland Class will assert claims for breach of implied warranty of merchantability, and violation of the Maryland Consumer Protection Act.[10] Individual state law variances are therefore not at all pertinent in this litigation. Accordingly, Plaintiffs and Members of the Classes may easily pursue their claims, which have already survived Whirlpool's Motion to Dismiss and have thus been deemed viable by this Court.

### 2. Class Action Is the Superior Method of Adjudication

Finally, Rule 23(b)(3) requires Plaintiffs to demonstrate that the proposed class action is superior to all other available forms of adjudication. In determining superiority, four considerations are relevant: (1) the interests members of the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3)

---

[10] As noted earlier in footnote 7, based on the discovery produced to date, Plaintiffs and Members of the California and Maryland Classes will not seek certification of the negligence claims originally asserted in the Second Amended Action Complaint.

the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Mooney v. Allianz Life Ins. Co. of North America*, 244 F.R.D. 531, 537 (D. Minn. 2007).

First, the interest of individuals in controlling this litigation is minimal. While the aggregate damages of all of the Classes may be significant, the damages to each individual are relatively modest compared with the costs of litigation, especially in light of the cost of expert witness testimony regarding the defective nature of the Refrigerators. Given the expense of securing counsel and pursuing claims separately, Members of the Classes have an enhanced interest in pursuing a class action rather than maintaining individual damage actions. *See Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor."); *DeBoer*, 64 F.3d at 1175 (purpose behind class actions is to eliminate the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation).

The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority here. Plaintiffs are aware of only one other class action, *Nessle, et al. v. Whirlpool Corporation*, alleging a defect inherent in Whirlpool's side-by-side Refrigerators. 1:07-cv-03009, filed October 2, 2007, (N.D. Oh.) (Ex. 9, hereto). The *Nessle* case, however, is distinct from that proposed here as it involves a different defect theory and is limited only to

purchasers of Whirlpool Refrigerators residing in Ohio. The existence of that litigation, therefore, does not affect Plaintiffs and the Members of the Classes in any manner.

The third factor looks to whether certification in this Court would: (1) lead to duplicative results; or (2) place the controversy in an inconvenient forum. *See* 7A Wright, Miller & Kane, §1780, at 572-73 (2d ed. 1986). Class certification will avoid duplicative results by unifying numerous common issues of law and fact. Duplicative results are also to be avoided here as Plaintiffs are unaware of any other Court considering certification of a related or similar action involving Class Members residing in Arkansas, California, or Maryland.

Finally, the proposed class action poses no significant manageability problems. As discussed above, this action stems from the defective nature of a single product (Whirlpool's Refrigerators), which has affected each Member of the Classes in a similar way. As such, this matter would not necessitate hundreds or thousands of extensive individual trials regarding causation or damages. Rather, these common claims can and should be tried for the Class as a whole. The alternative—hundreds or thousands of individual trials—would swamp this Court with repetitive litigation of identical factual and legal issues and needlessly stretch the resources of this Court. Also, because this class action is composed of three stand-alone Classes, only the law of Arkansas, California, or Maryland will apply to each of the Plaintiffs and Members of the Classes, depending on their state of residence. Thus, there are no choice-of-law or conflict-of-law issues to deal with. As explained above, any inherently individualized questions that remain once the existence of a common defect is established will be qualitatively minimal and simple to resolve. The class action device is thus plainly the superior mechanism by which to litigate this case.

## VII. CONCLUSION

For the reasons set forth herein, it is respectfully requested that Plaintiffs' motion for certification of the Classes as defined be granted and that the Court order such other and further relief it deems just and proper.

Dated: May 1, 2008

Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason
Khushi K. Desai
The Mason Law Firm, L.L.P.
1225 19th Street, NW, Suite 500
Washington, D.C. 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: gmason@masonlawdc.com

Bruce Mulkey
The Mulkey Attorneys Group, P.A.
1039 W. Walnut, Suite 3
Rogers, AR 72756
Telephone: (479) 631-0481
Facsimile: (479) 631-5994
Email: bruce@mulkeylaw.com

Alexander E. Barnett
144 W. 72nd Street
#3D
New York, NY 10023
Telephone: (212) 362-6174
Facismile: (917) 591-5227
Email: abarnett20@hotmail.com

Scott Wm. Weinstein
Morgan & Morgan, P.A.
12800 University Drive
Suite 600
Ft. Myers, FL 33907-5337
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Email: sweinstein@forthepeople.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 2, 2008, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Malcolm F. Wheeler  
wheeler@wtklaw.com  
Michael T. Williams  
Williams@wtklaw.com  
Galen D. Bellamy  
bellamy@wtklaw.com  
Jessica G. Simbalenko  
Simbalenko@wtklaw.com  
Wheeler, Trigg & Kennedy, LLP  
1801 California Street  
Suite 3600  
Denver, CO  80202  

Robert L. Jones, III  
bjones@cwlaw.com  
Conners & Winters  
211 East Dickson Street  
Fayetteville, AR  72701  

                                                  /s/ Gary E. Mason  
                                                  Gary E. Mason