```
       IN THE UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF ARKANSAS
                FORT SMITH DIVISION
```

PAULA RUSH, DIANE PERRY, and
BRIAN TODD, on behalf of themselves
and all others similarly situated                    PLAINTIFFS

         vs.                   CASE No. 07-2022

WHIRLPOOL CORPORATION                                 DEFENDANT

## O R D E R

    Now on this 13th day of November, 2008, comes on to be considered the plaintiffs' **Motion to Certify Class (Doc. 54).** The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

    1.   Plaintiffs bring this action against Whirlpool Corporation, alleging that they purchased defectively designed and manufactured refrigerators from Whirlpool. Plaintiffs assert claims for beach of implied warranty, negligence, and violation of consumer protection laws.

    2.   The three individual plaintiffs (Paula Rush, a resident of Maryland; Diane Perry, a resident of California; and Brian Todd, a resident of Arkansas) seek to bring the action on behalf of themselves, as well as on behalf of classes of purchasers of the subject refrigerators from Arkansas, California and Maryland. Plaintiffs define the proposed classes as "All persons in Arkansas, [California, and Maryland] who own a Whirlpool-branded side-by-side Refrigerator manufactured between 2002 and the present that

contains an in-door ice system which has malfunctioned as a result of a frozen water fill tube." (Doc. 63 pg. 4 n. 2.)[1]

3. "'It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Ihrke v. Northern States Power Co., 459 F.2d 566, 573 n.3 (8th Cir.) (internal citation omitted), vacated on other grounds, 409 U.S. 815 (1972). An ascertainable class exists if its members can be identified by reference to objective criteria. See Manual for Complex Litigation (Fourth), § 21.222 (2004). An inquiry into the merits of the case should not be required of the court in its determination of whether a person is a member of a class. See id.

4. Whirlpool argues, inter alia, that plaintiffs' proposed classes are not ascertainable because the court would have to undertake a fact-specific, individualized inquiry into whether each purported class member's ice-making system malfunctioned due to a frozen fill tube resulting from a defect in the fill tube's design.

5. Whirlpool submits an affidavit from Steven Namnick, a warranty analyst for Sears Holdings Corporation. According to Namnick:

> Sears operates its own extensive network of service technicians that provide[] both in-warranty and out-of-warranty service to Sears customers, including customers

---

[1] In their reply to Whirlpool's response to the motion for class certification (Doc. 63 pg. 4 n. 2), plaintiffs refined the definition of the classes to include only those individuals whose ice systems have malfunctioned "*as a result of a frozen water fill tube.*"

> who may have bought their appliances from retailers or distributor[s] other than Sears, but who have selected Sears for service when appliance service is necessary. In addition to the service technicians employed directly by Sears, Sears is the majority owner and operator of A & E Factory Services [hereinafter "A & E"], one of the nation's largest service providers for home appliances .... Further, Sears uses Sears-authorized third-party service providers [referred to as "ASA" providers] in areas of the country in which Sears and A & E do not provide service coverage.... Through Sears' databases, I have access to records of service calls performed by Sears service technicians, A & E service technicians, and ASA service technicians.... Sears receives and maintains both in-warranty and out-of-warranty service-call data for Sears and other retailers' or distributors' customers who have received service from Sears or A & E, even if the customers bought their appliances from a retailer or person other than Sears.

(Doc. 58 Ex. 2 ¶ 3.)

Namnick states that an analysis of both in-warranty and out-of-warranty service call data for the subject refrigerators reveals that only 4.1% of owners of the subject refrigerators have ever received a repair or replacement of a frozen ice-maker fill tube during the life of their refrigerator. According to Namnick, this includes individuals who have owned their refrigerators for more than six years. (Doc. 58 Ex. 2.)

6. Whirlpool also submits an affidavit from James Willis, Lead Engineer in Product Support Technology at Whirlpool. According to Willis, a frozen fill tube could be caused by many factors other than the fill tube's allegedly defective design or manufacture:

> * inadequate water pressure in the consumer's home;

3

    \*    a kinked water supply line leading to the refrigerator;

    \*    high mineral content in the consumer's water supply;

    \*    restricting or shutting off the consumer's water supply for a period of time;

    \*    ice-maker usage patterns;

    \*    failure to timely change the refrigerator's water filter; and

    \*    ambient temperature inside the freezer cavity.

(Doc. 58 Ex. 3 ¶ ¶ 15-19; Ex. 10.)

    7.    The Court agrees with Whirlpool that plaintiffs' proposed classes are not ascertainable because the Court would have to consider the merits of each individual's case before determining membership in the class. This is not the type of product liability case where the problem with the product is easily traceable to a design or manufacturing defect.

    Indeed, according to Sears' Warranty Analyst Steven Namnick, 95.9% of the purchasers of the subject refrigerators have used them for years without reporting a problem with the ice-maker's fill tube. Plaintiffs characterize Namnick's data as incomplete because it only includes purchasers who reported their problems to Whirlpool or Sears. (Doc. 63 pg. 8 n. 12.) However, Namnick's data also includes repair reports from A & E Factory Services, one of the nation's largest service providers for home appliances. Plaintiffs have offered no evidence that this data – while not

including every repair report from every appliance service provider in the country – is not representative of the scope of the problem.

Further, even for the 4.1% of purchasers who have reported problems with the ice-maker's fill tube, it appears that the problem could be attributable to many factors other than a defect – such as inadequate water pressure. Plaintiffs submit documents from Whirlpool which they argue demonstrate that these other factors were not the "primary" cause of the fill tube freezing. (Id. at pg. 9.) Plaintiffs acknowledge, however, that water pressure alone "accounted for ... 30 percent of the customer complaints." (Id.)

8.  Based on the foregoing, the Court finds that to determine membership in the classes, the Court would have to consider the merits of each individual class member's case. Specifically, the Court would have to conduct "mini-hearings" to determine whether each individual class member's ice-maker malfunctioned due to a frozen fill tube and then determine whether the problem was attributable to a cause other than the alleged defect. This task would be quite time-consuming, especially given the fact that the proposed classes contain individuals who purchased their refrigerators up to six years ago and could have experienced the ice-maker problem at any time during the life of their refrigerator. To be included in the class, these individuals would have to prove that their ice-maker malfunctioned due to a defect in

the fill tube rather than due to any number of other factors that could have caused the malfunction over the years.

9. Because the Court would have to address the above individual issues to determine membership in the classes, the Court concludes that the classes are neither ascertainable nor adequately defined. See In re Vioxx Products Liability Litigation, 2008 WL 4681368, *9 (E.D. La. 2008) (class was not ascertainable where, to determine membership in the purported class, the court would have to inquire into the substantive merits of each individual claim); Bostick v. St. Jude Medical, Inc., 2004 WL 3313614, *16 (W.D. Tenn. 2004) (certification of proposed class improper where, to establish who belonged in the class, court would have to conduct "mini-trials on the merits" to determine diverse issues of liability and causation); cf. Sanneman v. Chrysler Corp., 191 F.R.D. 441, 445-46 (S.D. Ill. 2000) (inability to easily identify members of proposed class precluded class action on behalf of automobile owners whose vehicles were painted with defective prime coat; court found that it would be impossible to definitively identify class members prior to individualized fact-finding regarding injury, individual use factors, and causation); Wanstrath v. Time Warner Entertainment Co., 1997 WL 122815, *3 (S.D. N.Y. 1997) (certification denied, as it would "bring thousands of possible claimants whose presence will ... require a multitude of mini-trials ... which will be tremendously time consuming and costly).

10. Accordingly, plaintiffs' **Motion to Certify Class (Doc. 54)** is **DENIED** and the Court finds it unnecessary to complete further analysis of the class certification requirements of Federal Rule of Civil Procedure 23.

An initial scheduling order will be issued forthwith.

**IT IS SO ORDERED.**

/S/JIMM LARRY HENDREN  
JIMM LARRY HENDREN  
UNITED STATES DISTRICT JUDGE